## THE VALMORE.
### No. 447.

Circuit Court of Appeals, Second Circuit.
July 12, 1937.

James A. Carney, of New York City, for appellant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The libelant is a New York corporation at whose shipyard at City Island, N. Y., the gas screw schooner yacht Valmore of 34 tons net was stored and repaired between October 31, 1934, and November 30, 1935. The reasonable value of the repairs is $1,927.02. Payment has not been made, and the libelant brought this action in rem to charge a lien upon the yacht for that amount under the provisions of the Merchant Marine Act of 1920 (section 30, subsecs. P, Q [46 U.S.C.A. §§ 971, 972]). It was successful in the District Court, and the claimant has appealed.

The claimant is also a New York corporation who was represented by a Mr. Stokes at all times pertinent to this controversy. The yacht had been purchased by the claimant in May, 1933, of another New York corporation, for whom a Mr. Plunkett acted in respect to matters now material, under a contract calling for payments of the purchase price in installments with provisions for its repurchase by the seller upon terms which need not now be stated. The buyer was bound to maintain the boat in seaworthy condition at its own expense and was to be allowed credit for such reasonable costs provided it was taken back by the seller. The shipyard of the libelant was recommended by the seller for the storage of the boat and some repairs not in controversy here were made, but it was customary for Stokes to have his own men do most of the work necessary to keep it in condition.

In September of 1934, Plunkett advised Stokes that the yacht was not being kept in satisfactory repair and was told that it would be sent to the libelant's yard where Plunkett could have such repairs made as he desired. It was taken there by Stokes and left in storage the last of October, 1934. Stokes ordered none of the disputed repairs made. Before any repair work was done, Stokes told Mr. Nevins, who acted for the libelant, "You know I am not responsible for this work," and Mr. Nevins, replied, "No, we assume Mr. Plunkett is responsible for that work and we received the order for that work from him." To which Stokes replied: "Well, I don't know that it makes a great deal of difference because Mr. Plunkett and I are going to settle amicably the title of the boat and I think Mr. Plunkett is going to take the boat back."

In May, 1935, however, Stokes tendered Plunkett a payment on the purchase price of the boat but that was refused as it had been decided to exercise the option to repurchase the boat. Some dispute arose between Stokes and Plunkett concerning the value of the repairs for which credit was to be given which prevented an agreement up to the time of the trial and the yacht had remained in the libelant's yard registered to the claimant.

On July 3, 1935, Stokes went to the libelant's yard with a Mr. Widner and told the libelant that neither he nor the ship would be responsible for any repairs unless they were ordered by him. At that time he paid libelant something on account for what was due concerning which there was no dispute. While the record is not very clear on the subject, it is to be inferred that the notice given by Stokes on July 3d concerned repairs not then made but contemplated under Plunkett's orders and which were later made to the amount of

the bill here sought to be charged as a lien on the yacht.

We conclude from the evidence that while there was some disagreement between Stokes and Plunkett as to the need for repairs to the yacht and some uncertainty whether Plunkett would or would not take it back, they came to an understanding that Stokes would take the boat to the libelant's yard where Plunkett could have it repaired; that libelant understood that Plunkett was to be responsible for that expense; that Stokes gave timely notice that neither he nor the boat would be liable for any repairs he did not order; and that none of those in issue were ordered by him.

That being so, decision must turn upon whether Plunkett had authority to bind the boat in ordering repairs. We cannot find that he had any authority so to do, and, moreover, the libelant was duly notified to that effect. Section 973 of title 46 U.S. C.A. provides in part that "* * * nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." As the libelant knew Plunkett had no authority to bind the yacht, it acquired no lien on the vessel.

Decree reversed and libel dismissed.